541 S.E.2d 250

**DUKE POWER COMPANY, n/k/a Duke Power, a division of Duke Energy Corporation, Appellant,**

v.

**The PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, and Blue Ridge Electric Cooperative, Inc., Respondents.**

No. 25241.

Supreme Court of South Carolina.

Heard Oct. 3, 2000.

Decided Jan. 24, 2001.

Rehearing Denied Feb. 21, 2001.

Richard L. Whitt, of Austin, Lewis & Rogers, of Columbia, and Jefferson D. Griffith, III, of Duke Power, of Charlotte, North Carolina, for appellant.

F. David Butler, of the Public Service Commission, and Steven W. Hamm and Mary Sowell League, of Richardson, Plowden, Carpenter & Robinson, all of Columbia, for respondents.

BURNETT, Justice:

This is an appeal from an order of the Circuit Court affirming the order of the Public Service Commission (Commission) ordering Duke Power Company n/k/a Duke Power, a division of Duke Energy Corporation (Duke) to cease and desist from attempting to provide power to the Nason Corporation (Nason), a new construction located within territory assigned to Blue Ridge Electric Cooperative, Inc. (Blue Ridge). We affirm.

## FACTS

In April 1969, Duke constructed a 44kv power line that ran from Westminster to Walhalla. The line was built temporarily on a 100kv double circuit line and was named the Darby Line. That same year, the General Assembly enacted the Territorial Assignment Act (Act), S.C.Code Ann. § 58–27–610 through – 670 (1976), effective July 1, 1969. The Act required the Commission to assign

> beginning as soon as practicable after January 1, 1970, to electric suppliers, all areas, by adequately defined boundaries which may be by reference to boundaries drawn on maps or otherwise, that are outside the corporate limits of municipalities, and that are more than three hundred feet from the lines of all electric suppliers as such lines exist on the dates of the assignments; provided, that the Commission may leave unassigned any area in which the Commission, in its discretion, determines the absence of assignment is justified by public convenience and necessity.

§ 58–27–640. Pursuant to this section, Duke, Blue Ridge, and Haywood Electric Membership Corporation submitted to the Commission a joint application for the assignment of electric service areas in Oconee County. The application included a map of Oconee County (Exhibit A) designating areas to be assigned to the applicants and areas to be left unassigned. The Commission approved the application and incorporated the map into its order (1972 Order). The order was a form order used by the Commission statewide. It stated, in its entirety:

> This matter comes before the Commission on Joint Application of Duke Power Company, Blue Ridge Electric Cooperative, Inc. and Haywood Electric Membership Corporation, under the provision of Section 24–15 of the Code of Laws of South Carolina for the assignment of electric service areas in Oconee County, South Carolina.
>
> The verified Application and attached map, Exhibit A, indicate the areas in Oconee County to be assigned to each applicant and the areas to be left unassigned. The Commission is of the opinion, and so finds, that the approval of this Application is in the public interest and that each of the applicants is able to provide adequate service in the territory assigned;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Application is approved, and the areas in Oconee County situated more than three hundred (300') feet from the lines of any electric supplier and outside the corporate limits of any municipality are assigned to the respective applicants or designated unassigned, all as shown on Exhibit A incorporated herein by reference and made a part of this Order as fully as if set out herein.

Duke's Darby line ran through territory assigned to Blue Ridge.

In October 1973, Duke added a 100kv circuit to the existing towers and constructed a new 44kv line along the same right of way to replace the 44kv line that had been temporarily strung on the towers. This new line was named the Bear Swamp 44kv line. Poles for the Bear Swamp line have 1974 "birthmarks." [1] In 1981, Duke began serving its first and only customer off the Bear Swamp line pursuant to a statutory exception permitting out-of-territory service to industrial customers with an initial load greater than 750 kilowatts. *See* S.C.Code Ann. § 58–27–620(2) (1976).

In 1996, Nason decided to build a new plant in Oconee County and asked Duke to be its electrical supplier. Duke began constructing new underground lines with which to serve Nason, and Blue Ridge filed an Emergency Petition for Rule to Show Cause and Petition for Immediate Cease and Desist Order with the Commission. After a hearing on the merits, the Commission granted the requested cease and desist order against Duke. The Commission subsequently filed a second order denying Duke's motion to reconsider. Duke appealed to the Circuit Court, which affirmed the Commission's orders.

## DISCUSSION

Did the Circuit Court err in affirming the Commission's finding Duke has no right to serve the customer in question?

Duke asks us to reverse the Commission's determination, affirmed by the Circuit Court, that it has no right to serve the

---

1. Birthmarks are markings or tags attached to poles indicating the date the equipment was erected or placed at a particular site.

Nason plant. We agree with the Circuit Court and Commission that Duke may not serve a customer located wholly within territory assigned to Blue Ridge.

This Court employs a deferential standard of review when reviewing a decision of the Public Service Commission and will affirm that decision when substantial evidence supports it. *Porter v. South Carolina Public Service Comm'n*, 333 S.C. 12, 507 S.E.2d 328 (1998). This Court may not substitute its judgment for the Commission's on questions about which there is room for a difference of intelligent opinion. *Id.* Because the Commission's findings are presumptively correct, the party challenging a Commission order bears the burden of convincingly proving the decision is clearly erroneous, or arbitrary or capricious, or an abuse of discretion, in view of the substantial evidence on the whole record. *Id.*, S.C.Code Ann. § 1–23–380(A)(6) (Supp.1999).

Duke's reasons why it should be allowed to serve the customer in dispute are essentially twofold. First, Duke argues the statute permits Nason to choose its electric supplier under the circumstances present here. Second, Duke argues the 1972 Order creates a swath of unassigned territory around its Bear Swamp line. We address each of these arguments in turn.

A. The Statute

Duke asserts it has a right to serve Nason because the customer is located partially within three hundred feet of its Bear Swamp line, thus creating a customer choice situation pursuant to § 58–27–620(1)(d)(iii). This subsection provides that a customer located partially within three hundred feet of certain lines of an electric supplier and partially within a service area assigned to another electric supplier may choose its supplier.

We disagree this subsection applies to give Duke the right to serve Nason. In order for § 58–27–620(1)(d)(iii) to apply to Duke's Bear Swamp line, the line must meet certain criteria: it must have been in existence on July 1, 1969 and it must be a distribution line. § 58–27–610(3). In order for a 44kv line like Duke's Bear Swamp line to be a distribution line, the parties must agree it is such or the Commission must find the line's

"primary purpose and use" is distribution. *See* § 58–27–610(3). The Commission determined Duke's Bear Swamp line is not a distribution line, but a transmission line, with no appurtenant service rights. There is abundant evidence in the record to support this determination, including the fact that the line was originally constructed as a transmission tie line, the original Darby 44kv line never served any customers, and the current Bear Swamp line has served only one customer in its history, pursuant to a specific statutory exception. Moreover, Duke's testimony reveals that in order to serve the Nason plant, a new distribution line would have to be built, a fact which suggests the Bear Swamp line is not, in fact, a distribution line.

Duke argues the Commission is without authority in this case to determine the nature of its line because the parties agreed the line was a protected distribution line when they drew it on the 1972 map. We find no evidence in the record to support Duke's assertion that mere depiction of the line has any significance as to its nature as a distribution or transmission line. On the contrary, the 1972 Order states that the map "indicate[s] the *areas* in Oconee County to be assigned to each applicant and the areas to be left unassigned" (emphasis added). Nothing in the language of the Order indicates an intent to establish all depicted lines as protected distribution lines. We conclude the map merely depicts the existence of Duke's transmission line through Blue Ridge's territory and does not constitute an agreement of the parties that the line is a protected distribution line.

Furthermore, we reject Duke's argument the Commission is without authority to determine the nature of Duke's line. On the contrary, the statute gives the Commission express authority to determine the nature of a disputed line. § 58–27–610(3). As noted above, the Commission's determination the disputed line is a transmission line is completely supported by the record. Thus, Duke has no right under the statute to serve the Nason plant.

B.  The 1972 Order

██  Duke asserts the 1972 Order creates a six hundred foot wide swath of unassigned territory within territory assigned to Blue Ridge, and that since Nason is located partially within

that swath, it may choose its electric supplier. Duke bases its argument on the following language in the 1972 Order:

[T]he areas in Oconee County situated more than three hundred (300') feet from the lines of any electric supplier and outside the corporate limits of any municipality are assigned to the respective applicants or designated unassigned, all as shown on Exhibit A.

Duke's interpretation is unpersuasive. The language of the Order merely tracks the language of the statute, which provides the Commission shall assign "all areas ... that are outside the corporate limits of municipalities, and that are more than three hundred feet from the lines of all electric suppliers as such lines exist on the dates of the assignments." § 58–27–640. As explained above, in order for the Bear Swamp line to qualify as a "line" under the statute, it must be a distribution line. § 58–27–610(3). Distribution lines in place prior to July 1, 1969 were protected by "corridor rights," that is, the right to serve all premises located "wholly within three hundred feet" of the supplier's line. § 58–27–620(1)(b) & (c).[2] Pursuant to its statutory mandate, the Commission could not assign territory within protected corridors. Thus, we read the disputed language of the 1972 Order as merely clarifying that territorial assignment does not abrogate existing corridor rights.

The interpretation urged by Duke would require this Court to interpret the 1972 Order in a way that is in direct conflict with the Territorial Assignment Act. We see no basis in either the Order or the statute to interpret the Order as creating a corridor of unassigned territory along Duke's Bear Swamp line.

**AFFIRMED.**

MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion, in which TOAL, C.J., concurs.

PLEICONES, Justice:

I respectfully dissent. In 1972, these parties[3] filed a joint application with the Public Service Commission (PSC) seeking

---

2. Duke concedes it does not have corridor rights here.

3. The application was also made by a third party, which has no interest in the present dispute.

the assignment of territory in Oconee County. In connection with this application, the parties submitted, as a joint exhibit, a map identifying the areas they sought to be assigned to each, and the areas which they asked to be designated as unassigned. The line at issue in this case, as well as other lines, are depicted on the map.

In my opinion, the fact that this power line is represented on the joint exhibit is determinative of the issue whether the line is a distribution line or a transmission line. The purpose of the map was to establish territorial assignments: only distribution lines are relevant to determining these assignments since service rights depend, in part, on proximity to such lines. *See* S.C.Code Ann. §§ 58–27–610(3); 58–27–620(1976). There was simply no reason for a transmission line to be included in the map, and no evidence that any were. Further, there is no dispute that the line qualifies to be a distribution line, since it was in existence on July 1, 1969,[4] as required under § 58–27–620, and since its voltage level is within the parameters of a distribution line. § 58–27–610(3). Under these circumstances, the only conclusion which can be drawn is that when the parties submitted their joint map and included the line at issue here, they manifested their agreement that this line was, in fact, a distribution line. *Id.* To reopen these territorial assignment consent orders, many of which like the one at issue here are more than twenty-five years old, and permit electric suppliers to litigate their intentions anew, is to encourage uncertainty where there is now stability.

I would hold that the 1972 PSC order approving the joint application assigning territory "as shown on [the joint map] incorporated herein by reference and made a part of this order" constitutes an agreement by the parties that Duke's Bear Swamp line is a distribution line. Further, since the Nason Corporation plant is partially located within 300 feet of this line, it has the right to choose its electric supplier. § 58–27–620(1)(d)(iii). Accordingly, I would reverse the circuit court order affirming the PSC's cease and desist order.

TOAL, C.J., concurs.

---

4. The fact that the line was changed out and renamed in 1974 is of no consequence here.