FACTS

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Electric & Gas Co., Appellant,
v.
Aiken Electric Cooperative, Inc., and The South Carolina Public Service Commission, Respondents.
 
 
 

Appeal From Richland County
 J. Mark Hayes, II, Circuit Court Judge

Unpublished Opinion No. 2005-UP-292
Submitted March 1, 2005  Filed April 21, 2005

AFFIRMED

 
 
 
Catherine Derrick Taylor, Francis P. Mood, Dalhi N. Myers, and Sarah P. Spruill, all of Columbia, for Appellant.
Fred David Butler, Marcus A. Manos, and J. David Black, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  This appeal arises from a dispute between South Carolina Electric and Gas (SCE&G) and Aiken Electric Cooperative (Co-op) over the right to serve electricity to a newly constructed school.  The South Carolina Public Service Commission (PSC) and circuit court found in favor of the Co-op.  We affirm.
FACTS
In 1993, Lexington School District Number 4 acquired a large tract of unimproved property located on Highway 321.  This property is within territory assigned to SCE&G for electrical service by the PSC.  However, a portion of the property is located within a 300-foot corridor the Co-op is entitled to serve pursuant to section 58-27-620(1)(d)(iii) of the South Carolina Code  (1977).  
In 1999, the school district decided to build Sandhills School, a combined elementary and intermediate school, on the property.  Both SCE&G and the Co-op submitted proposals to provide electrical service to the school.  The Co-ops proposal explained that a portion of the structure needed to be built within the 300-foot corridor in order for it to provide service to the school.  The school district accepted the Co-ops bid and to comply with their request, constructed a storage and maintenance facility within the Co-ops 300-foot corridor.  
The main building is constructed outside of the 300-foot corridor, and the Co-op did not deliver electricity directly to the storage and maintenance facility within its 300-foot corridor.  Rather, in order to comply with sound and safe engineering practices, the Co-op delivered service directly to the main school building and transmitted energy back to the maintenance and storage facility.    
On May 15, 2000, SCE&G filed a complaint before the PSC arguing that it had the exclusive right to serve the Sandhills School.  On May 3, 2002, the PSC approved the Co-ops provision of service to the school.  After SCE&Gs motion for reconsideration was denied, it appealed to the circuit court, which affirmed the PSCs decision.  
STANDARD OF REVIEW
The Public Service Commission is recognized as the expert designated by the legislature to make policy determinations regarding utility rates; thus, the role of a court reviewing such decisions is very limited.  GTE Sprint Communications Corp. v. Pub. Serv. Commn, 288 S.C. 174, 179, 341 S.E.2d 126, 128-29 (1986).  The appellate courts employ a deferential standard of review when reviewing a decision of the Public Service Commission and will affirm that decision when substantial evidence supports it.  Duke Power Co. v. Pub. Serv. Commn, 343 S.C. 554, 558, 541 S.E.2d 250, 252 (2001).  This court may not substitute its judgment for the commissions, especially on questions where there is room for a difference of opinion.  Id.  Because the Commissions findings are presumptively correct, the party challenging a Commission order bears the burden of convincingly proving the decision is clearly erroneous, or arbitrary or capricious, or an abuse of discretion, in view of the substantial evidence on the whole record.  Id.  Additionally, the PSC is traditionally given, just as any other agency, respectful consideration in their interpretation of a statute.  Nucor Steel v. Pub. Serv. Commn, 310 S.C. 539, 543, 426 S.E.2d 319, 321 (1992).  Where an agency is charged with the execution of a statute, the agencys interpretation should not be overruled without cogent reason.  Id.
LAW / ANALYSIS
SCE&G argues, based on legislative intent and the potential for absurd results, that the only sound reading of section 58-27-610(2) of the South Carolina Code (1977) requires that electricity actually be delivered within the 300-foot corridor.  We disagree.
According to the plain meaning rule of statutory interpretation, it is not the courts place to change the meaning of a clear and unambiguous statute.  Hodges v. Rainey, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).  Where the statutes language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.  Id.  Section 58-27-620(1)(d) of the South Carolina Code (1977) provides:  

With respect to service in all areas outside the corporate limits of municipalities, electric suppliers shall have rights and be subject to restrictions as follows: (1) Every electric supplier shall have the right to serve: . . . (d) If chosen by the consumer, any premises initially requiring electric service after July 1, 1969, (i) Which are located wholly or partially within three hundred feet of the lines of such electric supplier and also wholly or partially within three hundred feet of the lines of another electric supplier, as each of such suppliers lines exist on July 1, 1969 or as extended to serve consumers that the supplier has the right to serve or as acquired after July 1, 1969.

(Emphasis added.)
A plain reading of section 58-27-620 shows it is applicable to the case at hand.  The first two requirements are metthe school required service after July 1, 1969 and chose the Co-op.  Additionally, the premises are located partially within 300 feet of the Co-ops lines.  This plain reading is buttressed by the substantial deference afforded the decisions made by agencies entrusted with the task of interpreting statutes.  Nucor, 310 S.C. at 545, 426 S.E.2d at 321.  The PSC interpreted section 58-27-620 in just this manner in a prior decision.  In that case, the PSC ruled, inter alia, that a portico and covered driveway located within 300 feet of an existing line supported the right to provide electrical service to a main hospital and medical building.  In re Hartsville H.M.A., Inc., Order No. 98-450 (Pub. Serv. Commn June 16, 1998).  
However, SCE&G argues the court must examine the definition of premises.  Premises is defined in 58-27-610(2) as:  

[T]he building, structure or facility to which electricity is being or is to be furnished; provided, that two or more buildings, structures or facilities which are located on one tract or contiguous tracts of land and are utilized by one electric consumer for farming, business, commercial, industrial, institutional or governmental purposes, shall together constitute one premises, except that any such building, structure or facility shall not, together with any other building, structure or facility, constitute one premises if the electric service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure or facility.

(Emphasis added.)
Specifically, SCE&G argues the phrase to which electricity is being or is to be furnished is not precisely defined.  They argue two interpretations existthat the electricity be ultimately provided or alternatively actually delivered to a building within the electric suppliers assigned territory.  SCE&G suggests the Co-ops argument is that the statute merely requires an electric supplier to ultimately provide electricity to a building at least partially within its 300-foot corridor.  
SCE&G urges the adoption of the actual delivery interpretation and supports its argument with potential scenarios regarding provider overreach.  However, section 58-27-620 specifically addresses the right of a provider to supply a premises if it is located wholly or partially within the corridor.  Section 58-27-610 also broadly defines premises so that it can include more than one building and more than one tract of land.  This language demonstrates the legislatures intention to read this exception and the underlying term broadly.  Thus, it is logical to conclude that this broad legislative intent should be extended to the phrase to which electricity is being or is to be furnished, especially when we give an agency substantial deference in its interpretation of a statute.  
SCE&G also argues the intent of the legislation was to avoid higher costs and duplication of infrastructure.  While the Co-op has upgraded its lines to provide service to the school and also constructed new lines outside of its corridor in order to serve the school, we do not find that the statute prohibits these activities if they are undertaken to serve a premises the Co-op is entitled to serve under section 58-27-620. 
Finally, SCE&G argues the PSCs interpretation of section 58-27-620 could lead to absurd results.  It uses an apartment complex example to illustrate this contention.  SCE&G contends it would allow the Co-op to deliver power to a master-metered apartment complex outside its service territory if some power was routed back to a security station at the apartments entrance, which was within the Co-ops service area.  However, this broad reading of section 58-27-620 is checked by the definition of premises.  That definition states no building or group of buildings can constitute a single premises, if the electric service to it is separately metered and the charges for such service are calculated independently of charges for service to any other building, structure or facility.  S.C. Code Ann. § 58-27-610(2) (1977).  This would prevent an apartment complex from being only partially located within the corridor because it would be unusual if the buildings were not separately metered and the charges calculated independently.  
CONCLUSION
For the reasons discussed above, the circuit courts ruling is
AFFIRMED.
HEARN, C.J., WILLIAMS, J., and CURETON, A.J., concur.