692 S.E.2d 910

FRIENDS OF the EARTH, Appellant,

v.

The PUBLIC SERVICE COMMISSION OF SOUTH
CAROLINA, South Carolina Electric & Gas,
and Office of Regulatory Staff,

of whom South Carolina Electric & Gas, and Office
of Regulatory Staff are Respondents.

In re Combined Application of South Carolina Electric & Gas
Company for a Certificate of Environmental Compatibility and
Public Convenience and Necessity and for a Base Load Review
Order for the Construction and Operation of a Nuclear Facility
in Jenkinsville, South Carolina.

No. 26811.

Supreme Court of South Carolina.

Heard March 4, 2010.

Decided April 26, 2010.

362

Robert Guild, of Columbia, for Appellant.

Belton T. Zeigler and Lee E. Dixon, both of Pope Zeigler, LLC, Florence P. Belser, Nanette S. Edwards and Shannon Bowyer Hudson, all of Office of Regulatory Staff, James B. Richardson, Jr., Mitchell Willoughby and Tracey Green, both of Willoughby & Hoefer, all of Columbia, and K. Chad Burgess, and Catherine D. Taylor, both of SC Electric & Gas Co., of Cayce, for Respondents.

Justice HEARN.

Friends of the Earth (Appellant) appeals from the order of approval issued by the Public Service Commission (Commission) of the combined application of South Carolina Electric & Gas Company (SCE & G) to construct and operate an additional two-unit nuclear facility, as well as to revise its rates to reflect the cost of capital applied to the project. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In May of 2008, SCE & G filed a combined application for certificate of environmental compatibility, public convenience and necessity (Application) pursuant to the Utility Facility Siting and Environmental Protection Act (Siting Act),[1] and the Base Load Review Act,[2] with the Commission. The purpose of the Application was to seek the approval of the Commission to construct and operate a new two-unit nuclear generating facility (Facility) in Jenkinsville, South Carolina. The project is to be jointly owned by SCE & G and the South Carolina Public Service Authority (Santee Cooper). The application was put together following an evaluation of the growing demand for electricity and a comparison of the available electricity generation technologies, which arrived at the conclusion that nuclear generation was the least costly alternative available. As a part of the Application under the Base Load Review Act, SCE & G also applied for: (1) a pre-construction review of the prudency of its decision to construct the Facility; (2) approval of cost and milestone targets for completing the Facility; and (3) an initial rate adjustment of one-half of one

---

1. S.C.Code Ann. § 58–33–10 et seq. (1977 & Supp.2009).

2. S.C.Code Ann. § 58–33–210 et seq. (Supp.2009).

percent to reflect the cost of constructing and carrying the Facility.

Appellant is a not-for-profit membership organization that advocates clean energy usage initiatives, based on efficiency improvements, along with renewable energy sources such as wind, geothermal, and solar power. Appellant claims membership consisting of ratepayers of SCE & G and residents of South Carolina, including neighbors of the site of the proposed Facility, who allege they have direct and material interests in access to economical, clean, and sustainable electric service, as well as an interest in protecting the use and enjoyment of the natural resources of the State. Appellant opposed the Application of SCE & G, and timely filed a petition to intervene in the proceeding before the Commission, which was allowed.[3] Additionally, The Office of Regulatory Staff (ORS) was a party to the Application[4] pursuant to section 58–4–10(B) of the South Carolina Code (Supp.2009), and is a respondent in this matter on appeal.

The Commission held a hearing on the Application, and by Order No. 2009–104(A) approved the Application of SCE & G, authorizing the construction and operation of the Facility. Petitions for Rehearing or Reconsideration were filed on behalf of Appellant, the South Carolina Energy User Committee, and Joseph Wojcicki, which were denied by the Commission by Order No. 2009–218. Thereafter, Appellant appealed the denial to this Court.

---

**3.** In addition to Appellant, the Commission also received timely petitions to intervene from CMC Steel South Carolina, Pamela Greenlaw, Mildred A. McKinley, Lawrence P. Newton, the South Carolina Energy User Committee, Ruth Thomas, Maxine Warshauer, Samuel Baker, and Joseph Wojcicki. Although petitions for rehearing from the order on appeal were filed by the South Carolina Energy User Committee and Wojcicki, in addition to that filed by Appellant, none of the above-listed intervenors are a part of the appeal before us.

**4.** South Carolina Department of Health and Environmental Control, South Carolina Department of Natural Resources, South Carolina Department of Parks, Recreation and Tourism, and the Town of Jenkinsville were all listed as parties based on the provisions of section 58–33–140 of the South Carolina Code (Supp.2009), but did not appear or take part in the proceedings.

## LAW/ANALYSIS

### I. Standard of Review applied under the Base Load Review Act

Initially, Appellant contends this Court should apply a new standard of review to the analysis of the Commission below, because this is the first combined application the Commission has decided under the Base Load Review Act.[5] Appellant maintains a new standard of "heightened scrutiny" is the appropriate standard this Court should apply to decisions of the Commission under the Base Load Review Act. We disagree.

 Ordinarily, the Court's application of varying degrees of scrutiny is limited to those cases where a statute's constitutionality is being challenged under the Equal Protection Clause of the Constitution. *See* U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. The application of heightened, or strict scrutiny is warranted in cases where "a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage. . . ." *Fraternal Order of Police v. S.C. Dep't of Revenue,* 352 S.C. 420, 431, 574 S.E.2d 717, 722 (2002) (quoting *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)). Appellant cites no authority for the proposition that application of this level of scrutiny is necessary to review the utility regulation decisions of the Commission, and moreover fails to identify a fundamental right that has been abridged. At the core of Appellant's argument is its assertion that the Base Load Review Act so fundamentally changes the landscape of Commission review of a company's proposal, a heightened level of scrutiny is necessary on the front end of the review process. We find Appellant's claim unsubstantiated and against the plain reading of the Base Load Review Act. Section 58–33–240(A) of the South Carolina Code (Supp.2009) specifically provides that "[e]xcept as otherwise specified in this article, all procedural requirements that apply to general rate proceedings by law or regulation shall apply to proceedings and combined proceedings, to revised

---

5. The General Assembly enacted the Base Load Review Act in 2007, by Act No. 16, effective upon signature of the Governor on May 3, 2007.

rates proceedings, *and to the judicial review of orders issued under this article."* (emphasis added). As a result, we find no basis for the application of a heightened level of scrutiny to appeals under the Act.

Consequently, "[t]his Court employs a deferential standard of review when reviewing a decision of the Public Service Commission and will affirm that decision when substantial evidence supports it." *Duke Power Co. v. Public Service Comm'n of South Carolina,* 343 S.C. 554, 558, 541 S.E.2d 250, 252 (2001) (citing *Porter v. South Carolina Public Service Comm'n,* 333 S.C. 12, 507 S.E.2d 328 (1998)). In applying a substantial evidence test, an appellate court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact, unless its findings or conclusions are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981); S.C.Code Ann. § 1–23–380 (Supp.2009). Substantial evidence is not a mere scintilla; rather, it is evidence which, considering the record as a whole, would allow reasonable minds to reach the same conclusion as the agency. *Lark* at 135–36, 276 S.E.2d at 306–07.

Furthermore, the Court may not substitute its judgment for the Commission's on questions about which there is room for a difference of intelligent opinion. *Duke Power Co.,* 343 S.C. at 558, 541 S.E.2d at 252. Because the Commission's findings are presumptively correct, the party challenging a Commission order bears the burden of convincingly proving the decision is clearly erroneous, or arbitrary or capricious, or an abuse of discretion, in view of the substantial evidence. on the whole record. *Id.*

## II. Alleged Failings of the SCE & G Application

Appellant next contends SCE & G failed to update its integrated resource plan (IRP) or complete a review of potential energy efficiency and demand side management (DSM) load reductions, thus SCE & G has failed to adequately demonstrate the need for the proposed capacity expansion of the Facility. We disagree.

The Commission's order references SCE & G's then-forth-coming DSM reports, as well as the company's requirement under section 58–37–20 of the South Carolina Code (Supp. 2009) to file an IRP. Based on the evidence and testimony included in SCE & G's combined application, both in favor and against, the Commission determined SCE & G had adequately accounted for and addressed these concerns in its forecasts. The consensus reached by the Commission was that SCE & G had demonstrated a need to build the Facility, irrespective of the concerns.

DSM programs are designed to reduce the overall energy consumption of customers. There are two general types of DSM programs: first, demand reduction programs that involve motivating customers to shift their use of power away from peak energy usage periods, thus limiting or reducing the growth of energy consumption during a utility's peak demand; and second, energy efficient programs which seek to reduce customers' overall energy consumption through customer information and energy conservation programs designed to educate the energy-consuming public. With respect to SCE & G's DSM reports, the Commission noted that SCE & G, at the time of the order, was exploring the revitalization of its programs in light of the current energy prices, general economic conditions, and the increased environmental concerns of its customers. In addition, the Commission acknowledged that SCE & G could have made a better effort at establishing its energy efficiency programs in the past, and stated its anticipation at reviewing the company's new DSM programs in June of 2009. Nonetheless, viewing the entirety of the evidence before it, the Commission determined that DSM programs were not a viable substitute for the base load capacity for which SCE & G had established a need, and sought to fulfill in the construction of the Facility.

Appellant also contends SCE & G's most recent IRP update, which was completed in May of 2008, was not done close enough in time to the Application, and failed to give an accurate portrayal of the need SCE & G was facing. According to the Commission:

The objective of the IRP process is the development of a plan that results in the minimization of the long run total costs of the utility's overall system and produces the least

cost to the consumer consistent with the availability of an adequate and reliable supply of electricity while maintaining system flexibility and considering environmental impacts. In conjunction with the overall objective, the IRP should contribute toward the outcomes of improved customer service, additional customer options, and improved efficiencies of energy utilization.

Order No. 1991–885, August 28, 1991. Under section 58–37–40(A) of the South Carolina Code (Supp.2009), electrical utilities are required to file a detailed, fifteen year IRP with the State Energy Office, every three years, with updates made annually.

Appellant maintains that, because SCE & G did not conduct a separate IRP specifically for this combined application—and based on its typical IRP schedule, SCE & G's last IRP filing was in May of 2008—the data and forecasts that were a part of their most recent IRP were unreliable. As part and parcel to this argument, Appellant contends SCE & G failed to consider alternatives to nuclear power, such as solar, wind, landfill gas, biomass, natural gas, and coal. However, this argument is contradicted by the direct testimony of SCE & G's experts and employees, wherein they stated SCE & G considered each of the seven types of energy generation facilities listed above.

■ Finally, Appellant argues the Commission should have deferred its decision on SCE & G's combined application, or in the alternative, should have prospectively limited the company's ability to make adjustments in the approved schedule or budget for completion of the Facility. This argument is made, in principal part, due to the Application's alleged inadequacies regarding SCE & G's IRP and DSM plans. However, under the plain reading of the Base Load Review Act, neither of these requests are contemplated or authorized; therefore, Appellant's contentions are without merit. The General Assembly specifically provided that the Commission must rule and issue an order, either approving or disapproving, a request made by a utility, including requests made in an application under the Base Load Review Act, within nine months of the filing of the combined application. *See* S.C.Code Ann. § 58–33–240(E) (Supp.2009) (modifying, for the purposes of

the Base Load Review Act, the Commission's traditional requirement that all orders be filed within six months). This provision grants the Commission no discretion to delay the issuance of its order. Furthermore, section 58–33–270(E) of the South Carolina Code (Supp.2009) provides that once a final order by the Commission has been issued, a "utility may petition the commission ... for an order modifying any of the schedules, estimates, findings, class allocation factors, rate designs, or conditions that form part of any base load review order issued under this section." Clearly the General Assembly did not contemplate the Commission's ability to prevent subsequent modification of its orders under the Base Load Review Act, as subsection (E) expressly provides the utility that right.

As explained above, based on the overwhelming amount of evidence in the record, the Commission's determination that SCE & G considered all forms of viable energy generation, and concluded that nuclear energy was the least costly alternative source, is supported by substantial evidence.

### III. Failure of SCE & G to prove a need for the Facility

■ Appellant finally contends the Commission erred in finding SCE & G had established the proper need and prudency of building the Facility, given: SCE & G's size relative to other utility companies; the steep economic downturn the country and South Carolina is facing; and the fact that SCE & G will be the first utility to build this type of facility. Because the record demonstrates the Commission adequately considered each of the requirements under the Base Load Review Act, and its determinations are supported by substantial evidence in the record, we disagree.

Section 58–33–240(D) of the South Carolina Code (Supp. 2009) provides that in proceedings before the Commission, upon the filing of a combined application, "the utility shall have the burden of proving that the decision to build the plant was prudent, and shall have the burden of proof as to all matters on which the commission is required to enter findings under Section 58–33–270(A), (B), (C), (D), and (E)." Furthermore, under the new requirements of the Base Load Review Act, the Commission is obligated to go beyond the findings

required under the Siting Act to conduct a full pre-construction prudency review of the Facility and the Engineering, Procurement and Construction Contract under which it will be built, including setting out the construction and annual capital cost schedules establishing the prudency and reasonableness of the Facility's costs. S.C.Code Ann. § 58–33–270 (Supp. 2009). Section 58–33–270 requires the Commission to hold a hearing, and thereafter, if the application is approved, issue an order setting out the following findings:

(1) that the utility's decision to proceed with construction of the plant is prudent and reasonable considering the information available to the utility at the time;

(2) for plants located in this State, that the utility has satisfied the requirements of Section 58–33–160 of the Utility Facility Siting and Environmental Protection Act, either in a past proceeding or in the current proceeding if the current proceeding is a combined proceeding; and

(3) for plants located outside South Carolina, that the utility has satisfied the requirements of Section 58–33–160(1)(a), 58–33–160(1)(d), and 58–33–160(1)(f) of the Utility Facility Siting and Environmental Protection Act.

(B) The base load review order shall establish:

(1) the anticipated construction schedule for the plant including contingencies;

(2) the anticipated components of capital costs and the anticipated schedule for incurring them, including specified contingencies;

(3) the return on equity established in conformity with Section 58–33–220(16);

(4) the choice of the specific type of unit or units and major components of the plant;

(5) the qualification and selection of principal contractors and suppliers for construction of the plant; and

(6) the inflation indices used by the utility for costs of plant construction, covering major cost components or groups of related cost components. Each utility shall provide its own indices, including: the source of the data for each index, if the source is external to the company, or the methodology for each index which is compiled from internal utility data, the method of computation of inflation from each index, a

calculated overall weighted index for capital costs, and a five-year history of each index on an annual basis.

(C) If revised rates are requested, the base load review order shall specify initial revised rates reflecting the utility's current investment in the plant which must be determined using the standards set forth in Section 58–33–280(B) and implemented according to Section 58–33–280(D).

(D) The base load review order shall establish the rate design and class allocation factors to be used in calculating revised rates related to the plant. In establishing revised rates, all factors, allocations, and rate designs shall be as determined in the utility's last rate order or as otherwise previously established by the commission, except that the additional revenue requirement to be collected through revised rates shall be allocated among customer classes based on the utility's South Carolina firm peak demand data from the prior year.

▇▇▇▇▇▇▇ In reviewing the decision of the Commission under a statute for which it is charged with the administration, the Commission is "the 'expert' designated by the legislature to make policy determinations regarding utility rates; thus, the role of a court reviewing such decisions is very limited." *Hamm v. South Carolina Public Service Comm'n,* 289 S.C. 22, 25, 344 S.E.2d 600, 601 (1986) (quoting *Patton v. South Carolina Public Service Comm'n,* 280 S.C. 288, 291, 312 S.E.2d 257, 259 (1984)). "[The Court has] traditionally given the [Commission], just as any other agency, respectful consideration in their interpretation of a statute. Where an agency is charged with the execution of a statute, the agency's interpretation should not be overruled without cogent reason." *Nucor Steel, a Div. of Nucor Corp. v. South Carolina Public Service Comm'n,* 310 S.C. 539, 543, 426 S.E.2d 319, 321 (1992).

Without addressing all of the considerations SCE & G advanced to establish its need for the Facility in the Application, the record is replete with evidence from which the Commission could come to the conclusion that SCE & G's need was satisfactorily established. The crux of Appellant's argument is that SCE & G is too small of a utility to be the guinea pig for these types of nuclear facilities, and that given the cost of capital estimates associated with projects of this

magnitude, coupled with the downturn in the economy, the costs for this risky facility would ultimately be passed on to the SCE & G customers. While this is a valid and noteworthy point, the Commission addressed each and every concern Appellant presented, over and above the findings it was required to make under section 58–33–270. At the end of the day, the Commission, in a very thorough and reasoned order, determined SCE & G has appropriately established a need for the Facility, and thereafter approved SCE & G's proposed rate increases as reasonable costs to be passed on to the customers for the construction of the Facility. Without a doubt, these determinations are supported by substantial evidence in the record.

## CONCLUSION

On balance, Appellant essentially asks this Court to substitute its judgment for that of the Commission, in an area in which the Commission is recognized as the expert. Although Appellant's concerns are deserving of evaluation, SCE & G's Application, as well as the Commission's thorough and well-reasoned order, reveal these considerations were adequately considered in the determination to approve the Application. Accordingly, the decision of the Commission is

**AFFIRMED.**

PLEICONES, Acting Chief Justice, BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.