697 S.E.2d 587

## SOUTH CAROLINA ENERGY USERS COMMITTEE, Appellant,

v.

The SOUTH CAROLINA PUBLIC SERVICE COMMISSION, South Carolina Electric & Gas, and Office of Regulatory Staff, of whom South Carolina Electric & Gas, and Office of Regulatory Staff are, Respondents.

In Re Combined Application of South Carolina Electric & Gas Company for a Certificate of Environmental Compatibility and Public Convenience and Necessity and for a Base Load Review Order for the Construction and Operation of a Nuclear Facility in Jenkinsville, South Carolina.

No. 26856.

Supreme Court of South Carolina.

Heard April 6, 2010.

Decided Aug. 9, 2010.

Scott Elliott, of Elliott & Elliott, of Columbia, for Appellant.

Belton T. Zeigler and Lee E. Dixon, of Pope Zeigler, of Columbia, Florence P. Belser, Nanette S. Edwards, Shannon Bowyer Hudson, of Office of Regulatory Staff, of Columbia, James B. Richardson, Jr., of Columbia, Mitchell Willoughby and Tracey Green, both of Willoughby & Hoefer, of Columbia, and K. Chad Burgess and Catherine D. Taylor, both of SC Electric & Gas, of Cayce, for Respondents.

Justice HEARN.

In this appeal, the South Carolina Public Service Commission ("Commission") determined South Carolina Electric & Gas Company ("SCE&G") was entitled to recover contingency costs under the Base Load Review Act.[1] We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In 2005, SCE&G identified the need for additional base load power plants [2] to support increased energy demands in South Carolina. After extensive study, SCE&G elected to address these needs by constructing a two-unit nuclear generating facility in Jenkinsville. Following two years of contract negotiation, SCE&G entered into an agreement—the Engineering Procurement and Construction contract ("EPC contract")—with Westinghouse Electric Company, LLC ("Westinghouse") and Stone & Webster, Inc. (collectively "Westinghouse/Stone & Webster") for the acquisition and installation of the nuclear units. Under the terms of the EPC contract, more than half of the cost of the project was subject to fixed pricing (*i.e.* prices that are fixed in 2007 dollars subject to no inflation) or firm prices with adjustment provisions (*i.e.* prices that are fixed in 2007 dollars subject to fixed or indexed inflation going forward).[3] For the remainder of the contract, the price terms were neither fixed nor firm. Therefore, SCE&G assumes an increased risk that the actual costs of the project could exceed expectations with respect to this portion of the EPC contract.

In May 2008, SCE&G filed a combined application with the Commission, seeking certification under the Utility Facility Siting and Environmental Protection Act [4] to construct and

---

1. This is a companion case to *Friends of the Earth v. Pub. Serv. Comm'n of S.C.*, 387 S.C. 360, 692 S.E.2d 910 (2010).

2. Base load plants are typically either coal or nuclear fired plants. Base load plants are fuel efficient generating units that are designed and intended to run for extended periods of time at high capacity.

3. The majority of the equipment and service costs that are primarily nuclear in nature are subject to fixed or firm prices. The price terms that are neither fixed nor firm are primarily standard construction cost items (labor and general construction materials).

4. S.C.Code Ann. § 58–33–10 et seq. (1977 & Supp.2009).

operate the nuclear facility. Additionally, in the combined application, SCE&G asked for a rate adjustment to recover its anticipated capital costs of the project under the Base Load Review Act.[5] SCE&G estimated the capital costs of the project less inflation to be in excess of 4.5 billion. This figure included contingency costs in the amount of $438,293,000. SCE&G included contingency costs in the estimate of capital costs to account for the risks associated with the EPC contract and other variables.

The South Carolina Energy Users Committee ("Energy Users"), an association of large industrial consumers of energy who receive electrical service from SCE&G, timely filed a petition to intervene in the proceedings before the Commission.[6] During the three-week hearing before the Commission, Energy Users argued the Base Load Review Act did not allow the Commission to include contingency costs as a component of capital costs. The Commission rejected this argument. In its final order, the Commission granted the capital costs and contingency costs requested by SCE&G. This appeal followed.

## STANDARD OF REVIEW

This Court employs a deferential standard of review when reviewing a decision from the Commission and will affirm the Commission's decision if it is supported by substantial evidence. *Duke Power Co. v. Pub. Serv. Comm'n of S.C.*, 343 S.C. 554, 558, 541 S.E.2d 250, 252 (2001). The Commission is considered the expert designated by the legislature to make policy determinations regarding utility rates. *Kiawah Prop. Owners Group v. Public Serv. Comm'n of S.C.*, 359 S.C. 105, 109, 597 S.E.2d 145, 147 (2004). "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. S.C. Bd. of*

---

5. S.C.Code Ann. § 58–33–210 et seq. (Supp.2009).

6. In addition to Energy Users, the Commission also received timely petitions to intervene from CMC Steel South Carolina, Pamela Greenlaw, Friends of the Earth, Mildred A. McKinley, Lawrence P. Newton, Ruth Thomas, Maxine Warshauer, Samuel Baker, and Joseph Wojcicki. None of the above listed intervenors are a party to this action.

*Exam'rs In Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133
(1987). Because the Commission's findings are presumptively
correct, the party challenging the Commission's order bears
the burden of convincingly proving the decision is clearly
erroneous, or arbitrary or capricious, or an abuse of discre-
tion, in view of the substantial evidence of the record as a
whole. *Duke Power Co.,* 343 S.C. at 558, 541 S.E.2d at 252;
*see* S.C.Code Ann. § 1–23–380(5)(f) (Supp.2009) (stating this
Court may reverse or modify the Commission's decision if it is
arbitrary, capricious, or characterized by an abuse of discre-
tion).

## LAW/ANALYSIS

The Commission found SCE&G was entitled to recover
contingency costs as a component of capital costs pursuant to
section 58–33–270(B)(2) of the South Carolina Code (Supp.
2009). We disagree. In our view, the Commission abused its
discretion in granting contingency costs to SCE&G.

 "The cardinal rule of statutory construction is to
ascertain and effectuate the intent of the legislature." *Hardee
v. McDowell,* 381 S.C. 445, 453, 673 S.E.2d 813, 817 (2009)
(internal quotation omitted). Under the plain meaning rule, it
is not the province of the court to change the meaning of a
clear and unambiguous statute. *Hodges v. Rainey,* 341 S.C.
79, 85, 533 S.E.2d 578, 581 (2000). Where the statute's
language is plain, unambiguous, and conveys a clear, definite
meaning, the rules of statutory interpretation are not needed
and the court has no right to impose another meaning. *Gay v.
Ariail,* 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009).

 If the statute is ambiguous, however, courts must
construe the terms of the statute. *Lester v. S.C. Workers'
Comp. Comm'n,* 334 S.C. 557, 561, 514 S.E.2d 751, 752 (1999).
"A statute as a whole must receive practical, reasonable, and
fair interpretation consonant with the purpose, design, and
policy of lawmakers." *Sloan v. S.C. Bd. of Physical Therapy
Exam'rs,* 370 S.C. 452, 468, 636 S.E.2d 598, 606 (2006). Words
in a statute must be construed in context, and their meaning
may be ascertained by reference to words associated with
them in the statute. *Eagle Container Co., LLC v. County of
Newberry,* 379 S.C. 564, 570, 666 S.E.2d 892, 895–96 (2008).

When faced with an undefined statutory term, the term must be interpreted in accordance with its usual and customary meaning. *Branch v. City of Myrtle Beach,* 340 S.C. 405, 409–10, 532 S.E.2d 289, 292 (2000). Courts should not merely consider the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Id.,* at 410, 532 S.E.2d at 292.

Initially, the General Assembly explicitly defined what type of costs a utility can recover under the Base Load Review Act. In section 58–33–275(C) of the South Carolina Code (Supp. 2009), the General Assembly stated, "[s]o long as the plant is constructed or being constructed in accordance with the approved schedules, estimates, and projections set forth in Section 58–33–270(B)(1) and 58–33–270(B)(2) . . . the utility must be allowed to recover its capital costs related to the plant through revised rate filings or general rate proceedings." Thus, under the Base Load Review Act, a utility, such as SCE&G, can recover its capital costs related to the nuclear facility. The General Assembly did not leave any room for doubt as to what type of costs qualify as capital costs. The General Assembly broadly defined capital costs as:

[C]osts associated with the design, siting, selection, acquisition, licensing, construction, testing, and placing into service of a base load plant, and capital costs incurred to expand or upgrade the transmission grid in order to connect the plant to the transmission grid and includes costs that may be properly considered capital costs associated with a plant under generally accepted principles of regulatory or financial accounting, and specifically includes AFUDC [7] associated with a plant and capital costs associated with facilities or investments for the transportation, delivery, storage, and handling of fuel.

S.C.Code Ann. § 58–33–220(5) (Supp.2009).

 Contingency costs are not included in the statutory definition of recoverable capital costs. In fact, the phrase "contingency costs" does not appear anywhere in the Base

---

7. " 'AFUDC' means the allowance for funds used during construction of a plant calculated according to regulatory accounting principles." S.C.Code Ann. § 58–33–220(1) (Supp.2009).

Load Review Act. However, the term "contingencies" appears multiple times in the Base Load Review Act. Because it is not defined in the statute, we must interpret the word "contingencies" in accordance with its usual and customary meaning. *Branch*, 340 S.C. at 409–10, 532 S.E.2d at 292. In doing so, we cannot merely consider the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Id.*, at 410, 532 S.E.2d at 292.

The term "contingencies" appears for the first time in section 58–33–270(B)(1) of the South Carolina Code (Supp. 2009). Section 58–33–270(B)(1) provides, "[t]he base load review order shall establish: (1) the anticipated construction schedule for the plant including contingences...." Under section 58–33–270(B)(1), the Commission interpreted the term "contingencies" to refer to unexpected events potentially affecting the construction schedule of the nuclear facility. The Commission identified the possibility for "major components being damaged in transit or their manufacturing being delayed" as factors possibly contributing to the delay of the project. In light of the possible delays associated with a project of this magnitude, the Commission granted SCE&G a construction schedule contingency of eighteen months. Thus, it is clear the Commission interpreted the term "contingencies" as used by General Assembly in section 58–33–270(B)(1) to refer to unexpected events.

The term "contingencies" appears for a second time in section 58–33–270(B)(2) of the South Carolina Code (Supp. 2009).[8] Section 58–33–270(B)(2) states, "[t]he base load review order shall establish ... (2) the anticipated components of capital costs and the anticipated schedule for incurring them, including specified contingencies." The Commission found, "the plain meaning and grammatical structure of this statutory provision intends that contingencies be provided both for capital costs and for the schedule for incurring capital costs."

---

8. Normally, identical words within the same statute should be given the same meaning, unless the context suggests another meaning. *Eagle Container Co.*, 379 S.C. at 570, 666 S.E.2d at 895–96; *Smalls v. Weed*, 293 S.C. 364, 370, 360 S.E.2d 531, 534 (Ct.App.1987).

The Commission's finding indicates that it gave two meanings to the term "contingencies" in this section. On the one hand, consistent with the manner that it defined "contingencies" in section 58–33–270(B)(1), the Commission interpreted the term to refer to *unexpected events* accelerating or delaying SCE&G's schedule for incurring capital costs. In accordance with this understanding of the term, the Commission granted SCE&G a twenty-four-month cost acceleration contingency period to be used if the project was ahead of schedule, and an eighteen-month capital cost rescheduling contingency period to be used if the project should incur delays. On the other hand, the Commission interpreted the term "contingencies" to refer to *unexpected costs* and awarded SCE&G contingency costs in the amount of $438,293,000.

Based on the grammatical structure of section 58–33–270(B)(2), it is possible that the General Assembly intended for the term "contingencies" to apply to both "the anticipated components of capital costs *and* the anticipated schedule for incurring them." (emphasis added). However, even if we were to agree with such an interpretation of this statute, the term "contingencies" as it appears in section 58–33–270(B)(2) cannot have two meanings. In other words, it cannot refer to both unexpected events and unexpected costs. As a consequence, we find the Commission abused its discretion in finding the plain meaning of section 58–33–270(B)(2) allowed SCE&G to recover contingency costs. In our view, the statute is ambiguous. Moreover, we find it unclear as to whether the Base Load Review Act allows utilities to recover contingency costs. As explained above, the General Assembly unequivocally stated that capital costs were recoverable under the Base Load Review Act. 58–33–275(C). The General Assembly went on to expressly define capital costs. S.C.Code Ann. § 58–33–220(5). In doing so, the General Assembly did not include contingency costs in the definition of recoverable capital costs. For these reasons, we find it unclear as to whether contingency costs are recoverable under the Base Load Review Act. Thus, we turn to the policy objectives behind the Base Load Review Act to discern whether the General Assembly intended for utilities to recover contingency costs as a component of capital costs.

In enacting the Base Load Review Act, the General Assembly announced the purpose of the Act "is to provide for the

recovery of the prudently incurred costs associated with new base load plants ... when constructed by investor-owned electrical utilities, while at the same time protecting customers of investor-owned electrical utilities from responsibility for imprudent financial obligations or costs." S.C.Code Ann. § 58–33–210 (Supp.2009) (Editor's Note). Thus, the goal of the Base Load Review Act is two-fold: (1) to allow SCE&G to recover its "prudently incurred costs" associated with the nuclear facility; and (2) to protect customers "from responsibility for imprudent financial obligations or costs." *Id.*

Initially, the first objective of the Base Load Review Act is not achieved by allowing SCE&G to recover contingency costs. The contingency costs requested by SCE&G do not represent costs SCE&G anticipates incurring in constructing the nuclear facility. Jimmy Addison, Senior Vice President and Chief Financial Officer of SCE&G, testified "[t]he Company does not currently anticipate needing to use these contingencies...." Stephen Byrne, Senior Vice President of SCE&G, stated the contingency costs:

[A]re based on SCE&G's assessment of the potential for actual costs to be greater than the forecasted costs based on such things as the necessity for change orders, delays due to weather, delays in receiving licenses and permits, actual inflation exceeding applicable indices, and estimates of the units of time and materials used to price the project that understate actual requirements. In my opinion, these risk factors are not subject to mathematical quantification, but must be assessed as a matter of sound engineering judgment.

Accordingly, because contingency costs are not costs SCE&G anticipates incurring in constructing the nuclear facility, the first objective of the Base Load Review Act would not be achieved by allowing SCE&G to recover contingency costs.

The Commission's award of contingency costs to SCE&G also does not meet the second objective of the Base Load Review Act—to protect customers "from responsibility for imprudent financial obligations or costs." *Id.* SCE&G has not designated how contingency funds will be spent. Additionally, if this Court approves the contingency costs granted to SCE&G by the Commission, ratepayers will have no means

to challenge how SCE&G spends contingency funds in the future. S.C.Code Ann. § 58–33–275(B) (Supp.2009). Thus, in effect, the Commission has allowed SCE&G to increase rates so that it can recover in excess of 438 million dollars in speculative, un-itemized expenses with no mechanism in place to challenge the prudence of SCE&G's financial decisions. Accordingly, the Commission's award of contingency costs to SCE&G directly conflicts with the two stated purposes of the Base Load Review Act. For this reason, we find the General Assembly did not intend for SCE&G to recover contingency costs under the Base Load Review Act.

Furthermore, the enactment of section 58–33–270(E) of the South Carolina Code (Supp.2009) reveals that the General Assembly anticipated that construction costs could increase during the life of the project. Under section 58–33–270(E), SCE&G may petition the Commission for an order modifying rate designs. Consistent with the above mentioned objectives of the Base Load Review Act, section 58–33–270(E)(2) further states that the Commission should approve such a request, after a hearing, if the Commission finds the "rate designs are just and reasonable."

Accordingly, we find the Commission abused its discretion in granting SCE& G contingency costs under the Base Load Review Act. In light of our decision, we also find the Commission erred in adding inflation to the contingency costs. Therefore, the decision of the Commission is

**REVERSED.**

BEATTY, J. and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., dissenting in a separate opinion.
KITTREDGE, J., dissenting in a separate opinion.

Justice PLEICONES.

I join Justice Kittredge's dissent as I agree that we should defer to the Commission's interpretation of the statute it is required to administer. *See Dunton v. South Carolina Bd. of Exam'rs in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987).

I further dissent as I believe the Commission's order does not indicate that it gave two meanings to the word "contingencies," as used in S.C.Code Ann. § 58–33–270(B). Instead, I believe the Commission defined "contingencies" as "unexpected events" and simply considered the impact of such "unexpected events" in the context of each of the subsections of § 58–33–270(B), specifically in the context of the construction schedule and capital costs. This interpretation best comports with our rules of statutory construction. *See Adams v. Clarendon County School Dist. No. 2*, 270 S.C. 266, 241 S.E.2d 897 (1978) ("It is the duty of this Court to give all parts and provisions of a legislative enactment effect and reconcile conflicts if reasonably and logically possible."). Consequently, I would affirm the order of the Commission.

Justice KITTREDGE.

I respectfully dissent. I vote to affirm the order of the South Carolina Public Service Commission.

Pursuant to the Base Load Review Act, South Carolina favors the development and construction of new coal and nuclear fueled electrical generating facilities to meet our state's increasing energy demands. S.C.Code Ann. § 58–33–210 *et seq.* (Supp.2009). I agree with the majority that the applicable "statute is ambiguous" and that it is "unclear as to whether the Base Load Review Act allows utilities to recover contingency costs." Given this ambiguity juxtaposed to the clear purpose of the Act, I see no compelling reason to depart from the general rule that we should accord deference to the Commission's construction of a statute it must administer. I would not reverse the Commission's interpretation of the statute. The estimated capital cost of the proposed project is in excess of $4.5 billion, including contingency costs in the amount of $438,293,000. The Commission fully vetted all issues at the multi-week hearing, including the basis for determining the contingency costs. In my judgment, the inclusion of contingency costs for the construction of the proposed nuclear facility is amply supported by the record and survives the deferential "substantial evidence" standard of review.