**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

In re Application of Carolina Water Service, Inc. (n/k/a Blue Granite Water Company) for Approval of an Increase in its Rates for Water and Sewer Services, Appellant.

Appellate Case No. 2020-000266

Appeal from the Public Service Commission

Memorandum Opinion No. 2021-MO-010
Heard March 23, 2021 – Filed September 1, 2021

**AFFIRMED**

Frank Rogers Ellerbe III and Samuel J. Wellborn, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Appellant.

Jeffrey M. Nelson, Andrew M. Bateman, Steven W. Hamm, and Christopher M. Huber, all of Columbia, for Respondent South Carolina Office of Regulatory Staff; Carri Grube Lybarker, of Columbia, and Laura Rebecca Dover, of York, both for Respondent South Carolina Department of Consumer Affairs; and Laura P. Valtorta, of Valtorta Law Office, of Columbia, for Respondent Forty Love Point Homeowners' Association.

Catherine M. Wannamaker, of Southern Environmental
Law Center, of Charleston, for Amicus Curiae Congaree
Riverkeeper, Inc.

---

**PER CURIAM:** This case arose from a conflict between Carolina Water Service, Inc. (CWS) and the Town of Lexington (the Town) over one of CWS's wastewater treatment plants known as the I-20 facility. While the I-20 facility was intended originally to be a temporary facility, CWS and the Town could not agree on terms to connect the I-20 facility to the Town's regional wastewater treatment system. Many years later, after a number of failed negotiations between CWS and the Town, CWS was sued in federal court for (1) twenty-three violations of the Clean Water Act, and (2) failing to connect to a regional wastewater treatment system. *See Congaree Riverkeeper, Inc. v. Carolina Water Serv., Inc.*, 248 F. Supp. 3d 733 (D.S.C. 2017) (providing an extensive summation of the lengthy procedural history of the dispute over the I-20 facility). Ultimately, the parties settled, and the federal case was dismissed.

CWS then filed a ratemaking case with the Public Service Commission (PSC), seeking recovery of nearly $400,000 in attorneys' fees incurred in defending the federal suit. The PSC denied recovery of those fees, finding that although it had "considered the arguments and evidence CWS presented to it regarding the difficulties CWS encountered in negotiating with the Town . . . regarding connection of the I-20 [] facility to the regional system," it would be unfair to impose the attorneys' fees on the ratepayers of the I-20 facility. Specifically, the PSC explained the legal fees were related, at least in part, to CWS's failure to comply with the Clean Water Act—a duty with which the ratepayers already paid CWS to comply. Likewise, the PSC found the ratepayers did not derive any additional benefit from CWS's aggressive litigation tactics in federal court and the resulting attorneys' fees. Finally, the PSC opined that, as a matter of policy, allowing CWS to recover its litigation expenses brought about by its own failure to abide by the Clean Water Act provided no incentive for the utility to operate in compliance with federal, state, or local laws. This direct appeal followed.

CWS argues the PSC's decision was arbitrary and capricious and unsupported by substantial evidence. We disagree. The PSC's decision is well supported, factually and legally. The PSC acknowledged CWS's failure to connect the I-20 facility to the Town's wastewater treatment system was not entirely the utility's fault, but nonetheless found it was more unfair to force ratepayers to pay the attorneys' fees from the federal suit. We cannot say the PSC did not fully consider the evidence,

or that the decision was unsupported by substantial evidence, or that the decision was arbitrary or capricious. *See Utils. Servs. of S.C., Inc. v. S.C. Office of Regul. Staff*, 392 S.C. 96, 103, 708 S.E.2d 755, 759 (2011) (explaining the Court "will not substitute [its] judgment for that of the PSC where there is room for a difference of intelligent opinion" (citation omitted)); *S.C. Energy Users Comm. v. S.C. Pub. Serv. Comm'n*, 388 S.C. 486, 491, 697 S.E.2d 587, 590 (2010) (explaining the Court must view the PSC's findings as "presumptively correct," and noting the party challenging the PSC's decision bears the burden of proof); *see also State ex rel. Utils. Comm'n v. Pub. Staff*, 343 S.E.2d 898, 906–07 (N.C. 1986) (setting forth a number of relevant factors considered by other states' utilities commissions in determining whether to allow a utility to recover legal fees from its ratepayers); *cf. id.* at 907 (finding that it "would be improper to require the very class of people [the state] sought to protect in assessing the penalty against [the utility] to indirectly pay for the penalty through the inclusion of related legal fees into [the utility's] operating expenses").

Perhaps more importantly, CWS's argument—that it acted reasonably in negotiating with the Town and attempting to connect with the Town's system—ignores the fact that the attorneys' fees were incurred defending *two* claims: (1) that it had failed to connect to a regional system; and (2) *that it had violated the Clean Water Act twenty-three times between 2009 and 2015*. Even assuming CWS is correct that it acted reasonably in negotiating with the Town, it does not excuse CWS's repeated violations of the Clean Water Act or the legal fees incurred in the federal lawsuit associated with defending those violations.

For the foregoing reasons, the decision of the PSC is

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**