## 22653

Steven W. HAMM, Consumer Advocate for the State of South Carolina, Appellant v. The SOUTH CAROLINA PUBLIC SERVICE COMMISSION and Carolina Power & Light Company, Respondents.

(352 S. E. (2d) 476)

Supreme Court

*Steven W. Hamm, Raymon E. Lark, Jr.*, and *L. Patricia Smith, S. C. Dept. of Consumer Affairs*, Columbia, *for appellant.*

*Marsha A. Ward, S. C. Public Service Com'n, Legal Dept.*, Columbia, *for respondent S. C. Public Service Com'n.*

*William F. Austin, Russell H. Putnam, Jr.*, both of *William Frederick Austin, P.A.*, Columbia; and *Robert W. Kaylor, Carolina Power & Light Co.*, of Raleigh, North Carolina, *for respondent Carolina Power & Light Co.*

Heard Oct. 20, 1986.

Decided Jan. 12, 1987.

NESS, Chief Justice:

This is a utility rate case. The circuit court dismissed the appellant Consumer Advocate's petition for judicial review. We reverse.

In January, 1985, respondent Carolina Power & Light Company (CP & L) initiated proceedings to adjust the base rate for fuel costs for the next six-month period. The Consumer Advocate was granted leave to intervene. At the hearing, the Consumer Advocate moved to exclude from the Public Service Commission's (PSC) consideration $998,668 in fuel costs incurred by CP & L as a result of a mandatory shutdown of one of its nuclear reactors. The PSC denied the request.

An electrical utility which purchases fuel for the generation of electricity is required to submit to the PSC its estimate of fuel costs, including costs for purchased power, for the next six-month period. S. C. Code Ann. Section 58-27-865(A) (Supp. 1985). The PSC uses that information to establish the appropriate base rate to be charged the utility's customers for that period. The actual rate base for each six-month period is determined by factoring in the surplus or deficit in actual cost as compared to estimated cost for the prior six-month period. S. C. Code Ann. Section 58-27-865(B) (Supp. 1985).

The Nuclear Regulatory Commission (NRC) has promulgated mandatory technical standards for the design of seismic pipe supports in nuclear power plants. NRC Bulletins # 79-02 and # 79-14 established the required specifications for permanent seismic pipe supports and interim pipe supports. In order to bring its Robinson Unit # 2 into compliance with the NRC standards, CP & L scheduled a shutdown of Unit # 2 for the purpose of making modifications. CP & L contracted with an engineering firm, EBASCO, to do the technical specifications in accordance with the NRC standards. During this planned outage approximately 450 seismic pipe supports were modified to the permanent NRC standards. When time became a factor, the remaining 133 seismic pipe supports were modified to the interim standards rather than the permanent standards so that Unit # 2 could return to service on January 9, 1985, the scheduled date.

A week later, during a routine inspection, the NRC determined that 96 of the 133 seismic pipe supports which had been modified to meet interim standards were not in compliance with NRC Bulletins # 79-02 and # 79-14. The NRC ordered Unit # shut down on January 16, 1985, to bring the

interim seismic pipe supports into compliance with the NRC standards. CP & L immediately began work on the seismic pipe supports, and Unit # 2 was returned to service on February 10, 1985.

During this unscheduled outage, CP & L spent $998,676 more on fuel than would have been spent during the same period had Unit # 2 not been shut down. The Replacement power came primarily from fossil steam generation on the CP & L system supplemented by turbine generation and purchased power.

In adjusting fuel costs for each six-month period, the PSC is required to disallow recovery of any fuel cost that it finds "without just cause to be the result of failure of the utility to make every reasonable effort to minimize fuel costs or any decision of the utility resulting in unreasonable fuel costs ..." S. C. Code Ann. Section 58-27-865(E) (Supp. 1985).

The Consumer Advocate argues the unscheduled outage and the resulting increase in fuel costs were the result of mismanagement by CP & L in failing to insure the modifications to the seismic pipe supports complied with NRC standards for interim modifications. Therefore, he argues, the excess fuel cost should be disallowed since CP & L failed to show it made every reasonable effort to minimize fuel costs. CP & L argues it delegated responsibility for the modifications to an expert, EBASCO, and its actions were therefore reasonable. CP & L seeks to charge the increased fuel costs incurred during the mandatory shutdown to its customers.

The PSC found it was "unclear" whether CP & L or EBASCO was responsible for the "unfortunate[ ] mistake in [determining] the safety factor of the pipe support." Nonetheless, it found CP & L made a reasonable effort to minimize fuel costs, and ruled the utility could pass the additional fuel costs to its customers. We disagree.

Section 58-27-865(E) requires the PSC to evaluate the conduct of the utility in making the decisions which resulted in the higher fuel costs. If the utility has acted unreasonably, and higher fuel costs are incurred as a result, the utility should not be permitted to pass along the higher fuel costs to its customers. *See, Public Service Commission of Maryland v. Baltimore Gas & Electric Company,* 60 Md. App. 495, 483 A. (2d) 796 (1984), *aff'd,* 305 Md. 145, 501

A. (2d) 1307 (1986); *Boston Edison Company v. Department of Public Utilities,* 393 Mass. 244, 471 N.E. (2d) 54 (1984); *Florida Power Corp. v. Cresse,* 413 S. (2d) 1187 (Fla. 1982). The rule does not require the utility to show that its conduct was free from human error; rather, it must show it took reasonable steps to safeguard against error. *Virginia Electric and Power Company v. Division of Consumer Counsel,* 220 Va. 930, 265 S. E. (2d) 697 (1980).

There is no evidence in the record that CP & L made any effort to insure the interim seismic pipe support modifications were made in compliance with NRC standards. The evidence shows only that CP & L hired EBASCO to do the technical specifications for the seismic pipe supports. There is no evidence of any effort by CP & L to insure that EBASCO's work complied with the NRC standards.

A utility cannot insulate itself from its responsibility under Section 58-27-865 by delegating decision-making authority to a third party. Responsibility for fuel costs which are incurred because of irresponsible decision-making must be on the decision-makers. If a utility was permitted to pass these costs along to its customers, it would have no incentive to minimize fuel costs.

The PSC's finding that CP & L made a reasonable effort to minimize these additional fuel costs is unsupported by the record. The decision of the PSC is reversed and the matter is remanded for entry of an order disallowing the additional fuel costs from the base rate.

Reversed and remanded.

HARWELL, CHANDLER and FINNEY, JJ., and LITTLEJOHN, Acting J., concur.

GREGORY, J., not participating.