## 23761

NUCOR STEEL, A DIVISION OF NUCOR CORPORATION, Appellant v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Carolina Power and Light Company, and Steven W. Hamm, Consumer Advocate for the Sate of South Carolina, Respondents.

(426 S.E. (2d) 319)

Supreme Court

*Garrett A. Stone* and *Julie B. Greenisen* of *Ritts, Brickfield & Kaufman,* Washington, D.C., and *Francis P. Mood* of *Sinkler & Boyd, P.A.,* Columbia, S.C. *for appellant.*

*Steven W. Hamm, Raymond E. Lark, Jr.,* and *Nancy Vaughn Coombs,* Columbia, *for respondent Consumer Advocate for State of S.C.*

*Marsha A. Ward,* Columbia, *for South Carolina Public Service Com'n.*

*William Frederick Austin,* Columbia, and *Len S. Anthony,* Raleigh, N.C., *for respondent Carolina Power & Light Co.*

Heard Nov. 5, 1992.

Decided Dec. 14, 1992.

TOAL, Justice:

This utility rate case arises from a circuit court order which reviewed a semiannual rate adjustment decision of the South Carolina Public Service Commission (PSC). We reverse in part and affirm in part.

## FACTS

When a nuclear power plant is operated efficiently, the associated fuel costs are significantly less than the costs for fossil fuel power generation. When a nuclear power plant is not producing at capacity, or suffers any downtime, the additional fuel costs are then computed based on the cost differential between the different fuel types. Because of the fluctuation of fuel costs and their concurrent impact on the utility rate system, S.C. Code Ann. § 58-27-865 (1991) requires the PSC to address semiannually the recovery of the cost of fuel used by utilities in providing electricity to South Carolina customers.

In accordance with the statute, a public hearing was held on September 19, 1990, by the PSC to determine whether Car-

olina Power and Light (CP&L) could recover their fuel costs for the previous semiannual period. The evidence presented at the hearing centered around a three-week training outage, experienced by CP&L's Brunswick Nuclear Units 1 and 2, from May 20, 1990 to June 13, 1990. Based on the evidence, the PSC had to determine whether the outages experienced at the Brunswick facility were a result of imprudent or unreasonable management by CP&L. The PSC ruled that, although CP&L was imprudent and responsible for the outage, certain other CP&L actions, including their overall performance record, could be used to offset some of the excess fuel costs.

In an order dated February 4, 1992, Judge Walter J. Bristow, Jr. reviewed PSC Order No. 90-961 and affirmed in part, and remanded in part. Nucor Steel (Nucor), a large South Carolina customer of CP&L, appeals from the portion of the circuit court order which affirmed the PSC.[1]

## LAW/ANALYSIS

The first question presented is whether the language of S.C. Code Ann. § 58-27-865(E) authorizes the PSC to make adjustments to the recoverable fuel costs, or whether the statute merely provides a test for the prudent or reasonable behavior of management. S.C. Code Ann. § 58-27-865(E) states:

> [t]he Commission shall disallow recovery of any fuel costs that it finds without just cause to be the result of failure of the utility to make every reasonable effort to minimize fuel costs or any decision of the utility resulting in unreasonable fuel costs, **giving due regard to reliability of service, economical generation mix, generating experience of comparable facilities, and minimization of the total cost of providing service.**

*Id.* [Emphasis added.]

This statute was interpreted in *Hamm v. South Carolina Public Service Commission*, 291, S.C. 119, 352 S.E. (2d) 476 (1987), where we held that when higher fuel costs are incurred, and there is a finding of imprudence, the utility should

---

[1] The circuit court reversed a ruling by the PSC excluding evidence of an outage which occurred outside of the semiannual period. This issue was not raised on appeal by either party and is not properly before this Court.

not be allowed to pass on the additional fuel costs to their customers. *Id.* In this decision, we required that the record support any PSC finding that the fuel costs were reasonably incurred. *Id.* In *Hamm,* we were not required to interpret the language contained in the last portion of the statute. Unlike the case at bar, the key issue in *Hamm* focused on the PSC's finding of a reasonable effort to reduce fuel costs, and did not specifically address a PSC adjustment to the recoverable fuel costs.

We have traditionally given the PSC, just as any other agency, respectful consideration in their interpretation of a statute. Where an agency is charged with the execution of a statute, the agency's interpretation should not be overruled without cogent reason. *South Carolina Cable Television Association v. Southern Bell Telephone and Telegraph Company,* — S.C. —, 417 S.E. (2d) 586 (1992); *Dunton v. South Carolina Board of Examiners in Optometry,* 291 S.C. 221, 353 S.E. (2d) 132 (1987). Conversely, the PSC is created by statute and its authority is limited to that granted by the legislature. *Atlantic Coast Line R. Co. v. South Carolina Public Service Commission,* 245 S.C. 229, 139 S.E. (2d) 911 (1965).

In interpreting a statute, it is imperative that the statute be accorded its clear meaning. *Helfrich v. Basington Sand & Gravel Co.,* 268 S.C. 236, 233 S.E. (2d) 291 (1977). The PSC has interpreted the language of the statute, in light of our holding in *Hamm,* as granting them the authority to make adjustments to the recoverable fuel costs. We disagree. The clear and unambiguous meaning of the statute is that the PSC shall not pass on to the consumer any increased fuel costs associated with management's imprudence. The phrase "giving due regard" modifies the reasonableness or prudence of a utility's decision, and can not be construed so as to create discretionary factors for the PSC's use in the computation of recoverable fuel costs.

After examining the statute's plain meaning and our previous decision in *Hamm,* at 119, 352 S.E. (2d) at 476, we find that the PSC exceeded their authority in adjusting the fuel costs. The factors of reliability of service, economical generation mix, generating experience of comparable facilities, and minimization of the total cost of providing ser-

vice, can only be applied to the PSC's analysis of prudent or reasonable decision making. The PSC's determination that certain fuel costs were the result of CP&L management imprudence terminates the inquiry. The result is that any adjustment to non-recoverable fuel costs, using the statutory factors for the determination of imprudence, will be outside the PSC's scope of authority as granted by the legislature. *Cf. Virginia Electric and Power Co. v. Division of Consumer Counsel*, 220 Va. 930, 265 S.E. (2d) 697 (1980) (where the Virginia Supreme Court in interpreting a similar statute upheld a disallowance of fuel costs on the basis of a finding of imprudence).

The second question presented by Nucor is whether the PSC's 50% reduction of nonrecoverable fuel costs was the result of an arbitrary decision, or supported by the evidence. We need not reach this issue in light of our interpretation of the statute. Nucor's third and fourth issues, however, are extremely relevant and must be addressed.

The third issue Nucor raises is whether the PSC's reduction of nonrecoverable fuel costs, which reflects a two-week credit for maintenance testing during a forced training outage, was supported by the evidence. The PSC found that this management decision was reasonable and prudent. The record is replete with testimony, of both the company experts and the PSC staff witnesses, which supports this order. In *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135-36, 276 S.E. (2d) 304, 307 (1981), we analyzed the impact of the "substantial evidence" rule on a decision of an administrative agency.

> While the 'substantial evidence' rule allows more appellate authority to the courts, we think the language of the statute clearly indicates that its application is only in those cases where a manifest or gross error of law has been committed by the administrative agency. The statute [S.C. Code Ann. § 1-2-380 (1986)] specifically states: 'The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.' In addition, the statute states that the decision under appeal must be 'clearly erroneous' in view of the substantial evidence on the whole record.

\* \* \* \* \*

> The substantial evidence rule . . . means that we will not overturn a finding of fact by an administrative agency 'unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based.'

*Id.* [Citations omitted.]

The PSC found that the two-week outage offset for maintenance performed at Brunswick Unit 1 was prudent. There is substantial evidence in the record to support this finding, and it would fly in the face of both South Carolina case law and statutory law to overturn this finding. *See Id.; Patton v. South Carolina Public Service Commission,* 280 S.C. 288, 312 S.E. (2d) 257 (1984); *Atlantic Coast Line R. Co., supra;* S.C. Code Ann. § 58-27-865 (Supp. 1991). Further, as noted in the analysis of the first issue, the actions of CP&L's management can be reconciled with the PSC's determination of prudence.

Section 58-27-865(E) anticipates the use of this type of mitigation evidence to evaluate a management decision. Under Nucor's interpretation, we are asked to disregard the information as a factor of prudence while holding that the same factors are not applicable in the adjustment of recoverable fuel costs. Such a ruling would effectively render the last sentence of the statute meaningless. The well-settled rule in South Carolina is that, where possible, all provisions of a statute must be given full force and effect. *Bradford v. Byrnes,* 221 S.C. 255, 70 S.E. (2d) 228 (1952). To give effect to the statute, we cannot adopt a position which defeats the underlying legislative purpose.

We do not believe the General Assembly intended to establish a policy which would discourage a utility from trying to offset its damages to the public by maximizing the use of any downtime. A utility which suffers an unanticipated outage must have some motivation to consolidate scheduled maintenance into the same outage. A scheduled outage, with the associated recoverable fuel costs, is additional downtime, and a utility would be imprudent to merge the outages if the recoverable costs are then forfeited. Allowing the utility to recover a portion of their additional fuel costs, through the avoidance of downtime, is in essence a cure of

imprudent management. This management activity can and should be considered by the PSC in their determination of the reasonableness or prudence of a management decision under S.C. Code Ann. § 58-27-865(E). It is axiomatic that if the utility can not cure its imprudence, then both the utility and the public suffer through higher costs.

Similarly, the fourth issue Nucor raises is whether evidence existed to support the finding of reasonableness by the PSC for a refueling outage at Brunswick Unit 2. There is substantial evidence from the testimony of the CP&L expert, Mr. Coats, explaining what extended the time of the outage, and what the company's response was to that extension.[2] The Commission weighed this testimony against Nucor's experts and made a decision based on all of the evidence. The PSC's decision here, as with the Brunswick Unit 1 outage decision, has substantial evidentiary support in the record and is upheld for the same reasons.

The PSC's order interpreting S.C. Code Ann. § 58-27-865(E) (supp. 1991) and granting a 50% reduction in the non-recoverable fuel costs must be reversed. Those portions of the PSC's order, which found prudent managerial actions in connection with the Brunswick Units 1 and 2, are affirmed.

Accordingly, for the reasons stated, the circuit court's decision is reversed in part and affirmed in part.

HARWELL, C.J., FINNEY and MOORE, J.J., and RANDALL T. BELL, Acting Associate Justice, concur.

---

[2] The regularly-scheduled outage was extended by 12 days for the repair of certain welds in the area of the reactor. The evidence centered on CP&L's supervision of the contractor, General Electric. The PSC said they could not conclude that CP&L was unreasonable or imprudent in the management of

the contractor's time overrun, and this decision is supported by testimony in the record. Interestingly, General Electric paid a penalty for this lack of performance. The disposition of the penalty is currently under investigation by the PSC's staff.