# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Energy Users Committee,
Appellant/Respondent,

v.

South Carolina Electric and Gas, South Carolina Office
of Regulatory Staff and Pamela Greenlaw, Respondents,

and Sierra Club, is Respondent/Appellant.

Appellate Case No. 2013-000529

─────────────

Appeal From The Public Service Commission

─────────────

Opinion No. 27456
Heard April 16, 2014 – Filed October 22, 2014

─────────────

**AFFIRMED**

─────────────

Scott Elliott, of Elliott & Elliott, P.A., of Columbia, for
Appellant/Respondent.

Robert Guild, of Columbia, for Respondent/Appellant.

Belton Townsend Zeigler, of Pope Zeigler, LLC, and
James B. Richardson, Jr., both of Columbia, K. Chad
Burgess and Matthew W. Gissendanner, of Cayce,
Florence P. Belser, Nanette S. Edwards, Jeffrey M.
Nelson, and Shannon Bowyer Hudson, all of Columbia,
for Respondents.

─────────────

**CHIEF JUSTICE TOAL:**     The South Carolina Energy Users Committee (the SCEUC) and the Sierra Club (collectively, Appellants) appeal orders of the Public Service Commission (the Commission) approving Respondent South Carolina Electric & Gas's (SCE&G) application for updated capital cost and construction schedules, pursuant to the Base Load Review Act, S.C. Ann. §§ 58-33-210 to -298 (Supp. 2013) (the BLRA).[1]  In essence, this appeal presents the questions of whether the Commission applied the correct section of the BLRA, and whether the Commission must also consider the prudence of project completion at the update stage.  We affirm.

### FACTS/PROCEDURAL BACKGROUND

On March 2, 2009, SCE&G obtained an initial base load review order[2] authorizing it to complete a project involving the construction of two 1,117 net megawatt nuclear units in connection with the construction of a nuclear power plant at the V.C. Summer Nuclear Station located near Jenkinsville, South Carolina.

On May 15, 2012, SCE&G petitioned the Commission for a base load review order approving updates to the capital cost and construction schedules for the project.  SCE&G sought approximately $283 million in capital costs to be recouped from its customers in rates pursuant to the BLRA.  The application comprised the following changes to the costs enumerated in the initial base load review order: (1) an Engineering, Procurement, and Construction Contract (EPC) change order resulting from a settlement agreement for schedule changes and additional costs related to the time frame in which the Combined Operating License was received from the Nuclear Regulatory Commission, the redesign and construction of certain components, and certain Unit 2 site conditions ($137.5

---

[1] The South Carolina Office of Regulatory Staff (ORS) is also a respondent, made party pursuant to section 58-4-10 of the South Carolina Code.  *See* S.C. Code Ann. § 58-4-10 (Supp. 2013).

[2] A base load review order is "an order issued by the [C]ommission pursuant to Section 58-33-270 establishing that if a plant is constructed in accordance with an approved construction schedule, approved capital costs estimates, and approved projections of in-service expenses, as defined herein, the plant is considered to be used and useful for utility purposes such that its capital costs are prudent utility costs and are properly included in rates."  S.C. Code Ann. § 58-33-220(4).

million); (2) owner's costs ($131.6 million); (3) transmission costs ($7.9 million); and (4) additional EPC change orders for cyber security ($5.9 million), healthcare costs ($139,573), and wastewater piping ($8,250). With respect to updates to the construction schedules, SCE&G sought to delay the completion date of Unit 2 by eleven months, which would advance the date for completion of the entire project by seven and one-half months.

The Commission received timely notices to intervene by the Sierra Club,[3] the SCEUC, an organization consisting of industrial customers of SCE&G, and Pamela Greenlaw, a residential customer.[4]

A hearing was convened before the Commission to assess the application on October 2–3, 2012. By order dated November 15, 2012, the Commission approved $278.05 million of the $283 million in cost increases to the previously approved capital cost budget and approved the updated construction schedule, finding the cost increases resulted from "the normal evolution and refinement of construction plans and budgets for the Units and not the result of imprudence on the part of SCE&G."

Appellants filed petitions for reconsideration. In their petitions, along with specific errors, Appellants averred that the Commission erred generally in permitting the modifications after SCE&G did not anticipate the cost adjustments when it originally filed for an initial base load review order; that SCE&G was required to present a full evaluation of the prudence of the decision to continue to construct the nuclear units; and that the evidence in the Record was insufficient to meet that burden. By order dated February 14, 2013, the Commission denied Appellants' petitions for rehearing, finding they lacked merit. This appeal of the Commission's base load review order and decision to deny the petitions for reconsideration followed.

## ISSUES

---

[3] The Sierra Club is a non-profit organization dedicated to "protect[ing] the wild places of the earth" and to "promot[ing] the responsible use of the earth's ecosystems and resources." The Sierra Club's South Carolina Chapter consists of nine local groups and more than 5,000 members, some of whom are ratepayers of SCE&G and neighbors to the site of the proposed nuclear plant.

[4] Pamela Greenlaw is not party to this appeal.

I.    Whether the Commission erred by applying the wrong section, and therefore the wrong standard, of the BLRA?

II.   Whether the Commission erred in holding that a prudency evaluation of the need for the continued construction of the units is not required under the BLRA?

III.  Whether the evidence supports the Commission's finding that the additional capital costs were prudent under the BLRA?

## STANDARD OF REVIEW

"This Court employs a deferential standard of review when reviewing a decision from the Commission and will affirm the Commission's decision if it is supported by substantial evidence." *S.C. Energy Users Comm. v. Pub. Serv. Comm'n of S.C.*, 388 S.C. 486, 490, 697 S.E.2d 587, 589–90 (2010) (citing *Duke Power Co. v. Pub. Serv. Comm'n of S.C.*, 343 S.C. 554, 558, 541 S.E.2d 250, 252 (2001)). "The Commission is considered the expert designated by the legislature to make policy determinations regarding utility rates." *Id.* at 490, 697 S.E.2d at 590 (citing *Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 359 S.C. 105, 109, 597 S.E.2d 145, 147 (2004)); *see also Hamm v. Pub. Serv. Comm'n of S.C.*, 289 S.C. 22, 25, 344 S.E.2d 600, 601 (1986) (stating that because the Commission is an "expert" in utility rates, "the role of a court reviewing such decisions is very limited" (quoting *Patton v. Pub. Serv. Comm'n of S.C.*, 280 S.C. 288, 291, 312 S.E.2d 257, 259 (1984))). "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. S.C. Bd. of Exam'rs in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987); *see also Nucor Steel v. Pub. Serv. Comm'n of S.C.*, 310 S.C. 539, 543, 426 S.E.2d 319, 321 (1992) ("Where an agency is charged with the execution of a statute, the agency's interpretation should not be overruled without cogent reason."). Thus,

> [b]ecause the Commission's findings are presumptively correct, the party challenging the Commission's order bears the burden of convincingly proving the decision is clearly erroneous, or arbitrary or capricious, or an abuse of discretion, in view of the substantial evidence of the record as a whole.

*S.C. Energy Users Comm.*, 388 S.C. at 491, 697 S.E.2d at 590 (citing *Duke Power*

*Co.*, 343 S.C. at 558, 541 S.E.2d at 252); *see also* S.C. Code Ann § 1-23-380(A)(6) (Supp. 2013).

ANALYSIS

### I. Statutory Construction

Appellants argue that the Commission erred as matter of law by failing to apply the relevant legal standard in granting SCE&G's request because the additional capital costs could have been anticipated when SCE&G applied for an initial base load review order in 2008, and therefore, the additional costs were imprudent under the BLRA. In so arguing, they claim that the Commission erred by applying the prudence standard found in section 58-33-270(E) of the South Carolina Code, rather than the standard found in section 58-33-275(E). *See* S.C. Code Ann. §§ 58-33-270(E), -275(E).

The purpose of the BLRA "is to provide for the recovery of the prudently incurred costs associated with new base load plants . . . when constructed by investor-owned electrical utilities, while at the same time protecting customers of investor-owned electrical utilities from responsibility for imprudent financial obligations or costs." *S.C. Energy Users Comm.*, 388 S.C. at 494–95, 697 S.E.2d at 592 (citing S.C. Code Ann. § 58–33–210 (Supp. 2009) (Editor's Note)). Therefore, the objectives of the BLRA are:

> (1) to allow SCE&G to recover its "prudently incurred costs" associated with the nuclear facility; and (2) to protect customers "from responsibility for imprudent financial obligations or costs."

*Id.*

In an *initial* application for the approval of capital and construction costs pursuant to the BLRA, the Commission shall issue a base load review order approving rate recovery for capital costs if it determines, *inter alia*, that "the utility's decision to proceed with construction of the plant is prudent and reasonable considering the information available to the utility at the time." S.C. Code Ann. § 58-33-270(A)(1). The Commission's order must establish:

> (1) the anticipated construction schedule for the plant including contingencies;

(2) the anticipated components of capital costs and the anticipated schedule for incurring them, including specified contingencies;

(3) the return on equity established in conformity with Section 58-33-220(16);

(4) the choice of the specific type of unit or units and major components of the plant;

(5) the qualification and selection of principal contractors and suppliers for construction of the plant; and

(6) the inflation indices used by the utility for costs of plant construction, covering major cost components or groups of related cost components. Each utility shall provide its own indices, including: the source of the data for each index, if the source is external to the company, or the methodology for each index which is compiled from internal utility data, the method of computation of inflation from each index, a calculated overall weighted index for capital costs, and a five-year history of each index on an annual basis.

*Id.* § 58-33-270(B)(1)–(6); *see also Friends of the Earth v. Pub. Serv. Comm'n of S.C.*, 387 S.C. 360, 370, 692 S.E.2d 910, 915 (2010) (listing the necessary components of an initial base load review order).

However,

(E) As circumstances warrant, the utility may petition the commission, with notice to the [ORS], for an order *modifying* any of the schedules, estimates, findings, class allocation factors, rate designs, or conditions that form part of any base load review order issued under this section. The commission shall grant the relief requested if, after a hearing, the commission finds:

(1) as to the changes in the schedules, estimates, findings, or conditions, that the evidence of record justifies a finding that the changes are not the result of imprudence on the part of the utility; and

(2) as to the changes in the class allocation factors or rate

designs, that the evidence of record indicates the
proposed class allocation factors or rate designs are just
and reasonable.

S.C. Code Ann. § 58-33-270(E) (emphasis added).

Appellants argue that the Commission erred in applying section 58-33-270 to SCE&G's application. They argue that the proper legal standard in this case is found in section 58-33-275 of the BLRA, which provides:

So long as the plant is constructed or being constructed in accordance with the approved schedules, estimates, and projections set forth in Section 58-33-270(B)(1) and 58-33-270(B)(2), as adjusted by the inflation indices set forth in Section 58-33-270(B)(5), the utility must be allowed to recover its capital costs related to the plant through revised rate filings or general rate proceedings.

S.C. Code Ann. § 58-33-275(C). However,

[i]n cases where a party proves by a preponderance of the evidence that there *has been a material and adverse deviation* from the approved schedules, estimates, and projections set forth in Section 58-33-270(B)(1) and 58-33-270(B)(2), as adjusted by the inflation indices set forth in Section 58-33-270(B)(5), the commission may disallow the additional capital costs that result from the deviation, *but only to the extent that the failure by the utility to anticipate or avoid the deviation, or to minimize the resulting expense, was imprudent considering the information available at the time that the utility could have acted to avoid the deviation or minimize its effect*.

*Id.* § 58-33-275(E) (emphasis added).

In *South Carolina Energy Users Committee v. SCE&G*, we found that the Commission abused its discretion in allowing SCE&G to recoup contingency costs in an initial base load review order. 388 S.C. at 491, 697 S.E.2d at 590. In so finding, we said:

[T]he enactment of section 58-33-270(E) of the South Carolina Code . . . reveals that the General Assembly anticipated that construction costs could increase during the life of the project. Under section 58-

33-270(E), SCE&G may petition the Commission for an order
modifying rate designs.

*Id.* at 496, 697 S.E.2d at 592–93. This is exactly the course that SCE&G followed
here.

Thus, we find the BLRA contemplates changes to an initial base load review
order and provides the mechanism to accomplish such changes in section 58-33-
270, not section 58-33-275, as Appellants argue. *Cf. Friends of the Earth*, 387
S.C. at 369, 692 S.E.2d at 914–15 (stating that "section 58-33-270(E) . . . provides
that once a final order by the Commission has been issued, a 'utility may petition
the [C]ommission . . . for an order modifying any of the schedules, estimates,
findings, class allocation factors, rate designs, or conditions that form part of any
base load review order issued under this section,'" and that "[c]learly the General
Assembly did not contemplate the Commission's ability to prevent subsequent
modification of its orders under the [BLRA], as subsection (E) expressly provides
the utility that right"). On the other hand, section 58-33-275(E) applies only after a
utility has already deviated from an existing base load review order and attempts to
recoup costs from the deviation. In that situation, a party must demonstrate by a
preponderance of the evidence that the utility has deviated from the original base
load review order, and then the utility may only recoup costs that were not the
result of imprudence. Thus, the Commission correctly rejected Appellants' attempt
to convert the modification proceeding into a deviation proceeding, and because
SCE&G sought to update the existing base load review order, section 58-33-270
plainly applied. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581
(2000) ("[I]t is not the court's place to change the meaning of a clear and
unambiguous statute."); *see also Sloan v. S.C. Bd. of Physical Therapy Exam'rs*,
370 S.C. 452, 468, 636 S.E.2d 598, 606 (2006) ("A statute as a whole must receive
practical, reasonable, and fair interpretation consonant with the purpose, design,
and policy of lawmakers.").[5]

_____

[5] The titles of the sections lend further support to SCE&G's and ORS's positions as
section 58-33-270 is entitled "Base load review orders; contents; *petitions for
modification*; settlement agreements between [ORS] and applicant," whereas,
section 58-33-275 is entitled "Base load review order; parameter; challenges;
*recovery of capital costs*." (Emphasis added). *See Beaufort Cnty. v. S.C. State
Election Comm'n*, 395 S.C. 366, 373 n.2, 718 S.E.2d 432, 436 n.2 (2011) ("This
Court may, of course, consider the title or caption of an act in determining the
intent of the Legislature." (citation omitted)).

Therefore, we find the Commission did not err in applying section 58-33-270 to SCE&G's application for an additional base load review order to update the capital costs and construction schedules contained in the original base load review order.

## II. Continued Construction

Relying on section 58-33-280(K) of the BLRA, Appellants next argue that the Commission should have conducted a prudency evaluation of the entire construction project "going forward" at the time of the modification request. We disagree.

Section 58-33-280(K) provides:

Where a plant is abandoned after a base load review order approving rate recovery has been issued, the capital costs and AFUDC[6] related to the plant shall nonetheless be recoverable under this article provided that the utility shall bear the burden of proving by a preponderance of the evidence that the decision to abandon construction of the plant was prudent. Without limiting the effect of Section 58-33-275(A), recovery of capital costs and the utility's cost of capital associated with them may be disallowed only to the extent that the failure by the utility to anticipate or avoid the allegedly imprudent costs, or to minimize the magnitude of the costs, was imprudent considering the information available at the time that the utility could have acted to avoid or minimize the costs. The commission shall order the amortization and recovery through rates of the investment in the abandoned plant as part of an order adjusting rates under this article.

The mere fact that the BLRA provides for a course of action in the event of the abandonment of a construction project has no relevance under these circumstances. In fact, the express language of the BLRA contradicts Appellants' contention. Section 58-33-275(A) provides:

---

[6] "AFUDC" is "the allowance for funds used during construction of a plant calculated according to regulatory accounting principles." S.C. Code Ann. § 58-33-220(1) (Supp. 2013).

A base load review order shall constitute a final and binding determination that a plant is used and useful for utility purposes, and that its capital costs are prudent utility costs and expenses and are properly included in rates so long as the plant is constructed or is being constructed within the parameters of:

> (1) the approved construction schedule including contingencies; and

> (2) the approved capital costs estimates including specified contingencies.

S.C. Code Ann. § 58-33-275(A).  Moreover, "[d]eterminations under Section 58-33-275(A) may not be challenged or reopened in any subsequent proceeding, including proceedings under [s]ection 58-27-810 and other applicable provisions and [s]ection 58-33-280 and other applicable provisions of this article."  *Id.* § 58-33-275(B).

Practically speaking, it would be nonsensical to include such a requirement at this stage.  As the Commission aptly noted,

> [T]he BLRA was intended to cure a specific problem under the prior statutory and regulatory structure. Before adoption of the BLRA, a utility's decision to build a base load generating plant was subject to relitigation if parties brought prudency challenges after the utility had committed to major construction work on the plant. The possibility of prudency challenges while construction was underway increased the risks of these projects as well as the costs and difficulty of financing them. In response, the General Assembly sought to mitigate such uncertainty by providing for a comprehensive, fully litigated and binding prudency review before major construction of a base load generating facility begins. The BLRA order related to [the initial base load review order], is the result of such a process. It involved weeks of hearings, over 20 witnesses, a transcript that is more than a thousand pages long and rulings that have been the subject of two appeals to the South Carolina Supreme Court.

The Commission found that the BLRA did not require it to reassess the prudency of the entire construction project at that base load order review stage, and

we adopt its logic:

> Update proceedings are likely to be a routine part of administering BLRA projects going forward (including future projects proposed by other electric utilities), such that under the Sierra Club's argument, the prudence of the decision to build the plant will be open to repeated relitigation during the construction period if a utility seeks to preserve the benefits of the BLRA for its project. Reopening the initial prudency determinations each time a utility is required to make an update filing would create an outcome that the BLRA was intended to prevent and would defeat the principal legislative purpose in adopting the statute.[7]

Therefore, we find Appellants' argument that the Commission should have conducted a prudency evaluation of the entire construction project at this modification stage unavailing.

### III. Sufficiency of the Evidence

Next, Appellants argue that SCE&G failed to meet its burden to establish that the costs were prudent. We disagree.

As pointed out in SCE&G's brief, Appellants do not argue that the decision is not supported by substantial evidence, but that the Commission should have decided the modification application differently.

---

[7] However, we agree with ORS that Appellants received the review they sought because the Commission addressed the prudency of the entire construction project anyway:

> In any event, although not required by the terms of the BLRA, the record in this proceeding has provided the Commission with the sufficient evidence on which to examine and evaluate the positions of SCE&G and the Sierra Club on the factual issue of whether continuing with the construction of the Units is prudent and whether the additional costs and schedule changes are prudent. Based on the evidence of the record before us, the Commission concludes that the construction of the Units should continue and that the additional costs and schedule changes are not the result of imprudence on the part of SCE&G . . . .

We agree that Appellants failed to demonstrate that the factual findings are unsupported by reliable, probative, and substantial evidence in the record. *See Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996) ("Substantial evidence is not a mere scintilla of evidence nor evidence viewed blindly from one side, but is evidence which, when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached. The possibility of drawing two inconsistent conclusions from the evidence will not mean the agency's conclusion was unsupported by substantial evidence. Furthermore, the burden is on appellants to prove convincingly that the agency's decision is unsupported by the evidence." (internal citations and quotation marks omitted)). To the contrary, the Commission parsed all of the evidence presented during the hearing and provided a detailed summary of all of the testimony on which it based its very technical findings. Thus, there is no doubt that the Commission's findings are supported by substantial evidence in the Record. Therefore, we find that this issue lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the Commission's orders.

**PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**